UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WINDELS MARX LANE & MITTENDORF, LLP
William C. Cagney (wcagney@windelsmarx.com)
Rodman E. Honecker (rhonecker@windelsmarx.com)
120 Albany Street Plaza
New Brunswick, New Jersey 08901

Attorneys for Plaintiff Heritage Community Bank
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :

HERITAGE COMMUNITY BANK,      :
A New Jersey Chartered Bank,      :

                     :  Civil Action No. 08-4322 (JAG)

            Plaintiff,    :

                     :

           v.         :

                     :

HERITAGE BANK, N.A., a proposed National :  **DECLARATION OF PETER KENNY**
Association to be engaged in the business of :  **IN SUPPORT OF**
banking,                  :  **PRELIMINARY INJUNCTION**

                     :

          Defendant.    :

                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Peter Kenny, pursuant to Title 28 U.S.C. §1746, declares:

1.    I am President and Chief Executive Officer for Plaintiff Heritage Community Bank ("Plaintiff").

2.    This Declaration is submitted in support of Plaintiff's application for a preliminary injunction, and to prevent continued infringement of Plaintiff's service mark by Defendant Heritage Bank, N.A. ("Defendant"). I am fully familiar with all facts set forth herein and I am authorized to make this declaration.

## PLAINTIFF HERITAGE COMMUNITY BANK

**A.**     **Opening, Registered Mark, Expansion**

3.     Plaintiff is a New Jersey chartered bank.  Plaintiff's charter was issued on January 23, 2006.  Plaintiff opened for business on March 27, 2006.

4.     In its offering circular, the business of our bank was described as follows:

> "The Bank's Business Plan projects operating the Bank in a manner which enables it to serve its market area as a service-oriented, locally headquartered and owned depository and lending institution, focusing primarily on commercial real estate lending, commercial loans, small business lending, deposit gathering and personalized service.  The Bank will attract deposits from the general public and use those and other available sources of funds to originate loans.  The Bank also will invest in U.S. Government and federal agency obligations and mortgaged-backed securities which are backed by federal agencies and in tax-free bank qualified securities, when deemed appropriate.
>
> "The Bank, as a locally owned and headquartered commercial bank, will emphasize personalized customer service, convenience and local decision-making.  As part of this strategy, the Bank will develop a variety of products and services which meet the needs of its customers.  The Bank generally will seek to achieve long-term financial strength and stability by (i) achieving significant net interest income, (ii) maintaining a high level of asset quality, (iii) maintaining a level of capital that meets or exceeds regulatory requirements for a well capitalized bank, and (iv) controlling general, administrative and other expenses."

5.     Our bank's service mark, "Heritage Community Bank," has been used throughout its organizational phase, through its opening for business on March 27, 2006, and for conducting its banking business right up to the present.

6.     Our bank is the owner of the following federal service mark registration for the mark "Heritage Community Bank" for banking services: Registration No. 3,288,121, registered

on September 4, 2007.  This registration is valid and subsisting and remains in full force and effect.  A true copy of Plaintiff's registered service mark is attached hereto as Exhibit A.

7.    Our bank's federal service mark registration is for "Banking; Banking Consultation; Issuance of Bank Checks; Mortgage Banking; On-Line Banking Services; Providing Bank Account Information by Telephone, in Class 36 (U.S. CLS. 100,101 and 102)." See Exhibit A.

8.    Our bank currently has 21 full-time employees and 4 part-time employees.  Those employees are located at Plaintiff's two branches located in Randolph, New Jersey 07869.

9.    We currently plan on expanding by adding two branches.  Our bank's third branch is under construction and is located in Denville, New Jersey.  This branch is scheduled to open on or about October 1, 2008.  We are actively seeking a location for a fourth branch.

10.    As of June 30, 2008, Plaintiff has total assets of approximately $74,100,000.00.

11.    Plaintiff is a member of the following trade groups:  Independent Community Bankers Association; American Bankers Association; New Jersey League of Community Bankers; Northern New Jersey Bankers CEO Group; Morris County Chamber of Commerce and the Randolph Chamber of Commerce.  Plaintiff will be joining the Denville Chamber of commerce in the near future.  In addition, all of Plaintiff's officers are involved with various not-for-profit and/or service organizations.

**B.    Plaintiff's Full Service Banking, Trade Areas, Growth and Reach**

12.    Our bank offers a full range of banking services to the general public, including for checking and savings accounts and loans.  Most of Plaintiff's customers are located in New Jersey, but due to our bank's successful promotional work many are located throughout the New York Metropolitan area and beyond.

13.     The total number of deposit accounts totals 2,201 accounts as August 31, 2008. Total adjusted deposits were approximately $59,660,000.00 as of June 30, 2008. For example, we now have 1,648 deposit accounts (75% of total), derived from account holders located in 26 zip codes across Northern New Jersey (defined as including the following counties: Morris, Essex, Bergen, Union, Sussex, Warren and Somerset), with over $500,000.00 of deposits from each of those 26 zip code areas (aggregating to $36,572,000.00). Our bank has deposit accounts with account holders located in the following New Jersey counties:  Morris, Essex, Bergen, Union, Sussex, Warren, Somerset, Passaic, Hudson, Hunterdon, Middlesex, Monmouth, Mercer, Ocean, Burlington, and Atlantic. In addition, we have other deposit account holders located in New York City; Rockland County, New York; Richmond County (Staten Island), New York; and Oneida County, New York. We also have deposit account holders located in Pennsylvania, Connecticut, Maryland, Virginia, North Carolina, South Carolina, Florida, Ohio, Illinois, Colorado, Nevada, South Dakota, California and Hawaii.

14.     Plaintiff's primary focus is on loans, including commercial real estate lending, commercial loans, and small business lending to small and medium sized companies. Plaintiff's total loan portfolio was $56,815,000.00 as of June 30, 2008, with 406 active accounts. The average loan is approximately $140,000.00. Plaintiff has 19 lending relationships in excess of $1 million. Plaintiff tends to loan to businesses in a variety of industries whose annual revenues range from $100,000.00 up to $25 million. Our bank has loans with borrowers located in the following New Jersey counties:  Morris, Essex, Bergen, Union, Sussex, Warren, Somerset, Passaic, Hudson, Hunterdon, Middlesex, Monmouth, Mercer, Ocean, and Burlington.  In addition, we have other loans with borrowers located in New York City; Bronx County, New York; Westchester County, New York; Rockland County, New York; and Oneida County, New

York.  We also have loans with borrowers located in Pennsylvania, Rhode Island, North Carolina and Florida.

15.     As of August 31, 2008, our bank had 165 loan accounts totaling $36,572,000.00 (56% of total) that were derived from 19 zip codes across Northern New Jersey, with over $1 million of loans in each of those 19 zip codes areas, and lines of credit totaling approximately $1 million issued to New York customers.

16.     Our bank has defined its primary trade area as Morris, Warren, Sussex, Essex, Hudson, Bergen and Passaic Counties, New Jersey and its secondary trade area the remaining counties in the State of New Jersey; Plaintiff's tertiary trade area is anywhere that our shareholder base or referral sources lead us.  A true copy of the relevant portion of our bank's Loan Policy is attached as Exhibit B.

17.     Our bank participates with other lending institutions on larger loans.  Plaintiff has purchased 2 participations from other banks and sold 2 participations to other banks.

18.     Since inception, Plaintiff has expended approximately $429,000.00 in advertising and marketing branding the "Heritage" name, "Heritage Community Bank," including $49,691 expended in 2006; $192,260 in 2007; and $187,946 in 2008 through August 31st.  We have approximately $88,000.00 remaining in the 2008 budget for advertising and marketing expenses.  In total, by the end of 2008, our bank will have expended over $500,000.00 in advertising and marketing.

19.     Plaintiff advertises every week in the 3 local papers and normally advertises in the Sunday Daily Record (Morristown) and the Sunday Star Ledger.  Plaintiff has used both radio and television for advertising.  Plaintiff has broadcast radio advertisements on WMTR (1250 on

AM dial) and WDHA (105.5 on FM dial), both broadcast out of Morristown.  Plaintiff has broadcast television commercials on Cablevision, its "Morris Zone."

20.     Plaintiff has placed billboards on roads and highways in Dover, Netcong, Roxbury Township, Morristown, Kenvil and Randolph, New Jersey.  Plaintiff has also placed advertising posters at train stations in Dover, Morris Plains, and Denville, New Jersey.

21.     For our bank's grand opening in 2006, we sent out 13,400 direct mail pieces, and for our rewards checking program we sent out another 60,000 direct mail pieces.  We are in the process of finalizing our plans for opening our new Denville branch, which will include a direct mail drop of approximately 13,500 pieces.

22.     We currently utilize the Korn Hynes Advertising, Inc. located in Morristown, New Jersey.

23.     Plaintiff's sales force consists of 2 Business Development Officers, 2 Loan Officers (with a third starting on October 6th), 3 Branch Managers, 1 Senior Loan Officer and the President and CEO.  In addition, Plaintiff has a Board of Directors composed of 10 external Directors and a Business Development Council composed of 26 local business men and women Our Board and Business Development Council are made up of individuals who reside or do business in counties scattered throughout Northern New Jersey, including Morris, Essex, Hudson, Union, Passaic, Sussex and Warren Counties, as well as Monmouth County.  Each individual in each group has a defined goal for generating both loan and deposits to assist us in growing our bank's business.

24.     Plaintiff uses its Managers, Officers, and Directors, as well as its Business Development Council members, to develop business.  Plaintiff has developed targeted prospect lists for the staff to call on to solicit business, grow our bank, and expand its reach.  Plaintiff has

a calling program that requires each of them to make a specific number of calls on CPAs, attorneys, and other centers of influence as well as defined prospect lists of doctors, dentists and other professionals.  Our bank's loan officers have individual goals of a total of 240 calls per year (broken down by 156 prospect calls, 36 customer calls, 24 Center of Influence calls and 24 Advisory Board calls).  One business development representative has an individual goal of 352 marketing calls (broken down by 240 prospect calls, 96 Center of Influence Calls and 16 Advisory Board calls).  Another has an individual goal of 360 marketing calls (broken down by 288 prospect calls, 48 Affinity calls and 24 Center of Influence calls.  In addition, one branch manager has goals of 216 marketing calls (broken down by 192 prospect calls and 24 customer calls).

25.     Our bank has had a website since we opened, www.heritagecbnj.com.  As a result, we have been able to open a number of accounts outside our trade areas.  We currently have a proposal to upgrade our website to an interactive one.  The upgrade should cost between $30,000.00 and $40,000.00 and should be completed by the end of the year.

**C.     Plaintiff's Targeted Strategy and Positive Results**

26.     Plaintiff's target customer ranges from the small local business person with $100,000 in annual sales to middle market companies with annual sales up to $25 million.  Our bank's strategy is to develop relationships with the principal owner(s) because of our personalized, service-oriented philosophy, and local presence and decision-making.

27.     Our bank's strategy, with hard work, has earned success.  After our first 9 months in business, Plaintiff reported total assets of $39.1 million as of 12/31/06.  For the year ending 12/31/07, Plaintiff reported total assets of $55.4 million, which was an increase of $16.3 million or 42%.  As of June 30, 2008, unadjusted total assets were $74.1 million, an increase of $18.7

million or 34%.  On an annualized basis, Plaintiff's assets will increase $37.4 million or 67% for the year ending 12/31/08, to over $90 million, assuming the same growth trends continue for the remainder of 2008.  We hope to have total assets well in excess of $100 million in 2009.

28.    Our bank is widely known, recognized, and referred to by members of the banking and financial industry, as well as by members of the consuming public throughout its history, as simply "Heritage" or "Heritage Bank."

29.    As a result of our years of use and extensive sales of personalized services of the highest quality, complemented by extensive advertising, promotion and press coverage, the name and mark of "Heritage Community Bank" has come to be recognized by members of the business, banking and financial community, as well as by members of the consuming public, as exclusively identifying Plaintiff's services of the highest quality originating exclusively from Plaintiff.

30.    Moreover, as a result of the above, members of the business, banking and financial industry, as well as members of the consuming public, have come to recognize that any service mark beginning with "Heritage" or "Heritage Bank" when used for banking or financial services is a name extension of Plaintiff's "Heritage Community Bank" mark, designating personalized banking services of the highest quality originating exclusively from Plaintiff.

## DEFENDANT (IN ORGANIZATION)

### A.    Notice to Defendant of Infringement

31.    In May 2008, it came to Plaintiff's attention that Defendant's organizing group intended to establish a competing bank, "to service New York Metropolitan Area businesses and their owners and had filed an application for a national bank charter with the Office of the Comptroller of the Currency under the name and service mark "Heritage Bank, N.A."   See

Counsel's Declaration at Exhibit E.  Defendant has clearly stated its intention to conduct banking business and to serve customers in the New York Metropolitan Area, including New Jersey.  Id. at 38.

32.     As Defendant's actions constituted a clear violation of the service mark rights held by Plaintiff, Plaintiff's counsel wrote a cease and desist letter to the proposed President and Chief Executive Officer of Defendant.  See Counsel's Declaration at Exhibit C.  Plaintiff demanded that Defendant cease and desist from using the name "Heritage Bank" in connection with banking business within the New York Metropolitan Area.  Id.

33.     Discussions between the parties' counsel followed, although no compromise was reached because all of the proposals advanced by Defendant would infringe upon Plaintiff's service mark by use of "Heritage" as the dominant identifying word.  Id.

34.     On June 18, 2008, Defendant was granted conditional approval by the Office of the Comptroller of the Currency of its application for a national commercial bank charter.  See Counsel's Declaration at Exhibit F.  Defendant announced that it is presently targeting an early-fall 2008 opening and intends to raise between $60 and $85 million in capital to fund Defendant's formation and opening.  See Counsel's Declaration at Exhibit G.

**B.     Defendant's Identical Target Market and Overlapping Trade Area**

35.     Defendant has announced its "target market" to consist of "privately owned businesses and the middle market in the New York metropolitan area."  See Counsel's Declaration at Exhibit G.

36.     In its Offering Circular dated July 3, 2008, Defendant described its "Operating Strategy," inter alia, as follows:

> "Community-oriented board of directors.  Our proposed directors consist of experienced bankers or local business and community

leaders. Most of our proposed directors reside in or are resident of our primary service area, and all have significant business ties to enable them to be sensitive and responsive to the needs of the community. Additionally, our board of directors represents a wide variety of business experiences and community involvement. We expect that our directors will bring substantial business and banking contacts to us.

\* \* \* \*

"Individual client focus. We will focus on providing individual service and attention to our target clients, which include small and mid-size business owners, real estate owners, professionals from a variety of disciplines, locally owned businesses, and individual clients. As the Bank's employees, officers and directors become familiar with our clients on an individual basis, we will be able to respond to credit requests more quickly and be more flexible in approving complex loans based on collateral quality and personal knowledge of each client.

\* \* \* \*

"Marketing and advertising. We expect to utilize a targeted marketing program in our market area and to develop our image as a locally owned and operated bank with an emphasis on its people, quality service, local decision making, product delivery flexibility and personal relationships.
\* \* \* \*
"Opening additional banking locations. We plan to open additional banking locations in our primary service area and hire additional banking teams as opportunities become available and our financial and capital condition permit. We will focus our initial expansion efforts in areas where management has an intimate knowledge of the local market and is therefore likely to be most successful.

"Capitalize on our independent bank orientation. We plan to capitalize on our position as a locally owned independent bank to attract individuals and locally owned small and mid-sized business clients that may be underserved by larger banking institutions in our market area, which is a rapidly growing area.

"Emphasize local decision-making. We will emphasize local decision-making by experienced bankers. This will help us attract local businesses and service-minded clients." See Counsel's Declaration at Exhibit H, at 26-27.

37.     In its Interagency Charter Application to the Office of the Comptroller of the Currency and the Federal Deposit Insurance Corporation, Defendant, inter alia, stated:

> "The Bank will begin with a main office in New York City, New York and two additional locations within the New York metropolitan area, the exact sites for which have not yet been determined. The Bank will consider additional branch locations as necessary to adequately serve its customers to the extent supportable by capital and as opportunities arise. All additional branches will require regulatory approval.
> * * * *
> "The Bank does not intend to relocate the main office within the first three years. As additional capital permits and opportunities arise, the Bank may consider the strategic expansion of its banking office footprint, which would be subject to the prior review and approval of the OCC." See Counsel's Declaration at Exhibit E, at 38 and 45.

38.     Defendant has commenced solicitations in New Jersey and expressed its intent to conduct banking business in New Jersey. For example, by letter dated July 9, 2008, David S. Bagatelle, Defendant's President and CEO, wrote a letter to a Certified Public Accountant practicing in Randolph, New Jersey (the same town where Plaintiff has its principal place of business). Among other things, Defendant's President and CEO wrote: "Heritage Bank, N.A. (in organization) plans to service the financial needs of privately-owed businesses, their owners and executives in the New York metropolitan area – including New Jersey and Connecticut – in a manner that seems to have dissolved with the emergence of big banks. We would like you to consider becoming a founding shareholder." See Counsel's Declaration at Exhibit I.

39.     According to Defendant's Offering Circular, the organizers and directors of Defendant include persons with substantial ties to New Jersey, including Norman Schulman, CPA, described in Defendant's Offering Circular as a partner at Schulman Wolfson Pucci & Abruzzo, LLP, a certified public accounting firm with offices in New York City and North Brunswick, New Jersey, who serves on boards in Northern New Jersey and Princeton; Matthew

Seiden, described as a principal in an advertising and brand strategy firm who serves on board and university alumni committee in New Jersey as well as his house of worship's finance committee in Millburn; Richard Carmichael, described as a principal in a family business after spending eighteen years in commercial banking with United Jersey Bank and Summit Bank who is actively engaged in the Montclair community and on the Montclair Museum of Art Board; and Dr. Masood A. Rizvi, described as actively engaged in the private practice of medicine in Cedar Grove since 1979, affiliated with hospitals in Livingston, Montclair, and Newark, and a developer of ambulatory surgery centers in New Jersey who has developed an extensive reach to a network consisting of many physicians in the area.  See Counsel's Declaration at Exhibit H, at 35-39.

40.     During July and August 2008, Defendant's website stated that it had extended its public investor presentations for an additional month.  As of August 27, 2008, Defendant's website stated that it had concluded its public investor presentations.  As of September 17, 2008, Defendant's website stated that it had garnered sufficient commitments and subscriptions, but was receptive to additional inquiries, and indicated that it would move to the final phase of opening preparations, proposing to open in the Fall of 2008 subject to final regulatory approval.

**C.     Demonstrated Actual and Likelihood of Confusion**

41.     Plaintiff and Defendant's services are similar and move through similar channels of trade to similar classes of businesses and consumers, particularly small and medium sized businesses, and Plaintiff and Defendant will be in competition with respect to those services.

42.     Defendant's name of "Heritage Bank, N.A." is so similar to Plaintiff's name of "Heritage Community Bank," as to be likely to cause confusion, mistake or deception as to the source or origin of Defendant's services, in that the public and others are likely to believe that

Defendant's services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with or in some other way legitimately connected with Plaintiff, to Plaintiff's irreparable harm.

43.   Actual confusion has already occurred:

(a)   On August 27, 2008, I received an email from Fred Hyatt, a real estate broker. He wrote: "Just saw some Intel that an entity name "Heritage Bank" is consummating a transaction at 105 Eisenhower [in Roseland, New Jersey]. If you can share, is that your organization? Did you have representation?" A true copy of Mr. Hyatt's email is attached as Exhibit C.

I informed Mr. Hyatt that our bank was not involved.

(b)   Additionally, around the same time period, a banking industry professional informed me that he had heard "Heritage Bank" was planning on opening a sales office in Roseland and inquired about employment opportunities.

I informed the individual that our bank was not involved.

Based on these communications and follow-up communications, it appears Defendant is planning to open a loan production (sales) and wealth management services office in Roseland, New Jersey.

(c)   An employment recruiter (i.e., a headhunter) recently telephoned me about a prospect and expressed the mistaken impression he was speaking with the President and CEO of Defendant. More recently, I met a loan officer from another bank who inquired whether Defendant was affiliated with Plaintiff.

(d)   Mary Alice Raushi is the Chairman and CEO of Platinum Bank, a bank in formation to be headquartered in Morristown, New Jersey. Ms. Raushi recently questioned me whether Defendant was affiliated with our bank.

(e)   On September 13, 2008, I had an existing client of our bank stop by my office. Her father, a CPA in New York, had received a solicitation package from Defendant. She

wanted to know whether there was an affiliation with our
bank, as did her father.

Pursuant to 28 U.S.C. 1746, I hereby declare under penalty of perjury that the foregoing
is true and correct.  Executed on September __18__ , 2008.

PETER KENNY

# EXHIBIT A

Kenny Declaration Exhibit



## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

*To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date. (See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)*



*Jon W. Dudas*

*Director of the United States Patent and Trademark Office*

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

## United States Patent and Trademark Office

Reg. No. 3,288,121
Registered Sep. 4, 2007

### SERVICE MARK
### PRINCIPAL REGISTER

# Heritage Community Bank

HERITAGE COMMUNITY BANK (NEW JERSEY CHARTERED BANK)
1206 SUSSEX TURNPIKE
RANDOLPH, NJ 07869

FOR: BANKING; BANKING CONSULTATION; ISSUANCE OF BANK CHECKS; MORTGAGE BANKING; ON-LINE BANKING SERVICES; PROVIDING BANK ACCOUNT INFORMATION BY TELEPHONE, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7-1-2005; IN COMMERCE 7-1-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMMUNITY BANK", APART FROM THE MARK AS SHOWN.

SER. NO. 78-893,688, FILED 5-26-2006.

TINA BROWN, EXAMINING ATTORNEY

# EXHIBIT B

Kenny Declaration Exhibit

## COMPLIANCE

Each loan transaction must comply with applicable State and Federal banking laws and regulations. It is, therefore, the responsibility of each officer approving a particular transaction to ensure that such a transaction complies with these laws and regulations.

No loan commitment shall be extended without prior written approval of an appropriate authorized lender.

When considering any transaction, commitment or agreement involving loan documentation other than on existing Heritage Community Bank forms, Counsel should be consulted for proper form and language prior to closing or executing any such agreement.

It shall be the general policy of Heritage Community Bank that no loan request or application shall be declined based upon race, creed, color, national origin, sex, age, disability or marital status, the fact that an applicant's income is derived from any public assistance program, or the fact that an applicant has, in good faith, exercised any right under the Consumer Credit Protection Act or any similar law.

## TRADE AREA

### A. Primary Trading Area

Heritage Community Bank's primary trade area is defined as Morris, Warren, Sussex, Essex, Hudson, Bergen and Passaic Counties. The secondary trade area will be the remaining counties of New Jersey.

### B. Permissible Lending Area

Heritage Community Bank's lending officers may grant loans in any area in close proximity to the Bank which would permit servicing of those loan requests. More specifically the Bank's permissible lending area will include the entire state of New Jersey.

### C. Out of Area Loans

Heritage Community Bank is willing to entertain loan requests out of its area but only upon recommendation by the President/CEO or the Senior Loan Officer.

Some of the typical circumstances which would motivate Heritage Community Bank to consider loans outside of its trade area would be: Loan Participations, Loans to stockholders, loans to a business or individual introduced to Heritage Community Bank by a stockholder or depositor.

## LEGAL LENDING LIMIT

Heritage Community Bank's legal lending limit is 15% of the Bank's capital, surplus and undivided profits, and ALLL. For these purposes, total related debt should be

S:\HCB\Policies - Current\Loan Policy.doc
Revised 4-29-08                                                                           3

# EXHIBIT C

Kenny Declaration Exhibit

**Honecker, Rodman E.**

| | |
|---|---|
| **From:** | Peter Kenny [peter.kenny@heritagecbnj.com] |
| **Sent:** | Monday, September 15, 2008 3:41 PM |
| **To:** | Cagney, William; Honecker, Rodman E. |
| **Subject:** | FW: Follow Up |

Peter Kenny

President & CEO

1206 Sussex Turnpike

Randolph, N J, 07869

973-895-5810

This message (and any attachment) is confidential and intended for the sole use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under public law.  If you are not the intended recipient, employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you received this message in error, please notify the sender immediately and delete it.

**From:** Hyatt, Fred (US) [mailto:Fred.Hyatt@am.jll.com]
**Sent:** Friday, August 29, 2008 1:55 PM
**To:** Peter Kenny
**Subject:** RE: Follow Up

Please see the attached file containing a pictorial map and the info sheet for 105 Eisenhower Parkway, Roseland.  I included your location on the map for a frame of reference.  The space in question is on the 2nd floor and the address is a very peculiar branch location, therefore I would guess this must be some kind of processing center or back office.  When I get the comp I will share the particulars.

Enjoy your Holiday Weekend - Fred

**From:** Peter Kenny [mailto:peter.kenny@heritagecbnj.com]
**Sent:** Thursday, August 28, 2008 5:37 PM

**To:** Hyatt, Fred (US)
**Subject:** RE: Follow Up

Fred

I believe that is Heritage Bank NA. Can you provide me with any more details eg. Square footage, full address, city etc.Thanks and I'll see you on the second at 11am

Peter Kenny

President & CEO

1206 Sussex Turnpike

Randolph, N J, 07869

973-895-5810

This message (and any attachment) is confidential and intended for the sole use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under public law.  If you are not the intended recipient, employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you received this message in error, please notify the sender immediately and delete it.

---

**From:** Hyatt, Fred (US) [mailto:Fred.Hyatt@am.jll.com]
**Sent:** Wednesday, August 27, 2008 2:14 PM
**To:** Peter Kenny
**Subject:** RE: Follow Up

Pete,

Just saw some Intel that an entity name "Heritage Bank" is consummating a transaction at 105 Eisenhower. If you can share, is that your organization?  Did you have representation?

Thanks - Fred

---

**From:** Peter Kenny [mailto:peter.kenny@heritagecbnj.com]
**Sent:** Wednesday, August 27, 2008 11:23 AM
**To:** Hyatt, Fred (US)
**Subject:** RE: Follow Up

Fred



This copyrighted report contains research licensed to Jones Lang LaSalle - 103946.

8/29/2008
Page 1

## 1     105 Eisenhower Pky - Bldg 3



| Location: | **Bldg 3** |
|---|---|
| | **Roseland Boro** |
| | **West Essex Cluster** |
| | **Suburban Essex/Rt 280 Submarket** |
| | **Essex County** |
| | **Roseland, NJ 07068** |
| Developer: | **Mack-Cali Realty Corporation** |
| Management: | **Mack-Cali Realty Corporation** |
| Recorded Owner: | **Mack-Metropolitan (Ltd)** |
| Parcel Number: | **18-00020-0000-00003** |
| Parking: | **Ratio of 4.00/1,000 SF** |
| Amenities: | **Atrium, Food Service, On Site Management** |

| | |
|---|---|
| Building Type: | **Class A Office** |
| Status: | **Built Dec 2000** |
| Stories: | **4** |
| RBA: | **220,000 SF** |
| Typical Floor: | **55,000 SF** |
| Total Avail: | **30,615 SF** |
| % Leased: | **92.1%** |

| Floor | SF Avail | Floor Contig | Bldg Contig | Rent/SF/Yr + Svs | Occupancy | Term | Type |
|---|---|---|---|---|---|---|---|
| P 1st / Suite 1 North | 11,173 | 11,173 | 11,173 | $26.00-$28.50/te | Vacant | Negotiable | New |
| P 2nd / Suite 2 South | 6,206 | 6,206 | 6,206 | $26.00-$28.50/te | Vacant | Negotiable | New |
| P 3rd | 13,236 | 13,236 | 13,236 | $24.50/te | Vacant | Thru Mar 2016 | Sublet |

## 2         1206 Sussex Tpke - Heritage Plaza



| | |
|---|---|
| **Location:** **Heritage Plaza** | **Building Type:** Retail/(Strip Center) |
| **Morris West/I-80 Cluster** | **Bldg Status:** **Built Apr 2007** |
| **Western Morris Submarket** | |
| **Morris County** | **Building Size:** **12,000 SF** |
| **Randolph, NJ 07869** | **Typical Floor Size:** **12,000 SF** |
| | **Stories:** **1** |
| | **Land Area:** **1.83 AC** |
| **Developer:** - | |
| **Management:** - | **Total Avail:** **8,400 SF** |
| **Recorded Owner:** **Heritage Plaza South Llc** | **% Leased:** **30.0%** |
| | **Total Spaces Avail:** **6** |
| **Parcel Number:** **32-00101-0000-00003-0001** | **Smallest Space:** **1,400 SF** |
| | **Bldg Vacant:** **8400** |
| **Parking:** - | |

| Floor | SF Avail | Floor Contig | Bldg Contig | Rent/SF/Yr + Svs | Occupancy | Term | Type |
|---|---|---|---|---|---|---|---|
| P 1st | 1,400 | 1,400 | 1,400 | $25.00/nnn | Vacant | 1-3 yrs | New |
| P 1st | 1,400 | 1,400 | 1,400 | $25.00/nnn | Vacant | 1-3 yrs | New |
| P 1st | 1,400 | 1,400 | 1,400 | $25.00/nnn | Vacant | 1-3 yrs | New |
| P 1st | 1,400 | 1,400 | 1,400 | $25.00/nnn | Vacant | 1-3 yrs | New |
| P 1st | 1,400 | 1,400 | 1,400 | $25.00/nnn | Vacant | 1-3 yrs | New |
| P 1st | 1,400 | 1,400 | 1,400 | $25.00/nnn | Vacant | 1-3 yrs | New |